UNITED STATES DISTRICT COURT                    **(ECF)**
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
MARTIN HODGE,                          : 13 Civ. 1977 (LTS) (JCF)
                                       :
            Petitioner,                :       REPORT AND
                                       :       RECOMMENDATION
      - against -                      :
                                       :
PATRICK GRIFFIN,                       :
                                       :
            Respondent.                :
- - - - - - - - - - - - - - - - - - -:
TO THE HONORABLE LAURA TAYLOR SWAIN, U.S.D.J.:

    Martin Hodge brings this petition for a writ of habeas corpus
pursuant to 28 U.S.C. § 2254, challenging the decisions of the New
York State Division of Parole (the "Parole Board" or the "Board")
dated June 8, 2010, and August 10, 2010, denying his applications
for release to parole supervision.  He now contends that the Parole
Board (1) relied on inaccurate information and sealed records; (2)
improperly denied parole release solely based on the seriousness of
his underlying murder conviction; and (3) violated his due process
liberty interest to be rehabilitated.  For the reasons that follow,
I recommend that the petition be denied.

Background

    A.    Underlying Conviction

    On October 9, 1986, Mr. Hodge was convicted following a jury
trial in New York State Supreme Court, Bronx County, of murder in
the second degree, in violation of New York Penal Law § 125.25, and

was sentenced to an indeterminate term of 25 years to life imprisonment. (Pre-sentence Investigation Report dated Oct. 30, 1986 ("PSI"), attached as Exh. A to Declaration of Paul B. Lyons dated June 27, 2013 ("Lyons Decl."); Sentencing Transcript dated Oct. 31, 1986 ("Sentencing Tr."), attached as Exh. B to Lyons Decl., at 16; Judgment dated Oct. 31, 1986, attached as Exh. C to Lyons Decl.). According to the PSI, Mr. Hodge shot and killed his sixty-four-year-old landlord, apparently in retaliation for the landlord's eviction of the petitioner and his girlfriend from an apartment. (PSI at 4-8). His conviction was affirmed by the Appellate Division, First Department, and leave to appeal to the Court of Appeals was denied. People v. Hodge, 157 A.D.2d 598, 550 N.Y.S.2d 346 (1st Dep't), leave to appeal denied, 75 N.Y.2d 967, 556 N.Y.S.2d 252 (Table) (1990). Mr. Hodge subsequently filed a CPL § 440.10 motion to vacate his judgment of conviction and a coram nobis motion asserting ineffectiveness of appellate counsel, both of which were denied. People v. Hodge, 273 A.D.2d 950, 714 N.Y.S.2d 625 (Table) (1st Dep't 2000). In 1999, the petitioner filed a writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2254, challenging his conviction. Hodge v. Greiner, No. 99 Civ. 9734 (S.D.N.Y.). On March 21, 2001, the Court dismissed the petition as untimely, and on October 11, 2001, the Court of Appeals for the Second Circuit affirmed that decision. Hodge v. Greiner,

2

269 F.3d 104, 106-07 (2d Cir. 2001).   Mr. Hodge does not now challenge his underlying conviction.

    B.   <u>Denial of Parole</u>

    Mr. Hodge first appeared before the Parole Board on June 8, 2010.[1]   (Transcript of Hearing dated June 8, 2010 ("6/10 Tr."), attached as Exh. F to Lyons Decl.).   At the hearing, he recounted, and expressed remorse for, the murder he had committed.   (6/10 Tr. At 3-7, 13-14).   He explained how he has "change[d] [his] life completely around"; while in prison, he obtained a General Equivalency Diploma and two college degrees, and worked as "a mobility guide to help blind inmates."   (6/10 Tr. at 11).   He also stated that he intended to join his wife and her sons upon release from prison.   (6/10 Tr. at 12).   He acknowledged that he had had some disciplinary issues while in prison, noting that his last Tier

---

    [1]   In 2009, the New York Legislature enacted New York Corrections Law § 803-b, which authorizes the issuance of "limited credit time allowances" ("LCTA") to inmates who meet certain criteria, including participating in certain inmate programs.   <u>Spavone v. Fischer</u>, No. 10 Civ. 9427, 2012 WL 360289, at *1, 3 & n.2 (S.D.N.Y. Feb. 3, 2012); <u>Ciaprazi v. Fischer</u>, 95 A.D.3d 1567, 1567 & n.*, 944 N.Y.S.2d 795, 796 & n.* (3d Dep't 2012).   An LCTA allows eligible inmates to qualify for conditional release or parole release six months earlier than they would have otherwise.   <u>Spavone</u>, 2012 WL 360289, at *1.   Here, the petitioner qualified for an LCTA, and as a result, his first hearing before the Parole Board on June 8, 2010, took place months before his original parole eligibility date.   (May 2010 Limited Credit Time Initial Inmate Status Report dated April 22, 2010 ("Inmate Status Report"), attached as Exh. D to Lyons Decl.; Division of Parole Memorandum dated May 21, 2010, attached as Exh. E to Lyons Decl.).

III violation was in 2006 and his last Tier II violation was in 2007.[2] (6/10 Tr. at 11-12). He also stated that as a "young kid," he had been arrested for, among other things, "stealing tires off cars." (6/10 Tr. at 10).

At the conclusion of the hearing, the Parole Board denied parole, concluding that "[a]ll factors considered[,] . . . release at this time is incompatible with the welfare and safety of the community and would so deprecate the seriousness of the instant offense as to undermine respect for the law." (6/10 Tr. at 16). In reaching this decision, the Board noted that the underlying offense was "an extreme escalation of an out of control, larcenist related criminal history" and that the petitioner had "a less than satisfactory discipline history." (6/10 Tr. at 16). The Board did, however, credit his "ongoing positive programming." (6/10 Tr. at 16).

Mr. Hodge reappeared before the Parole Board on August 10,

---

[2] In the New York Prison System, three types of disciplinary hearings are conducted. 7 N.Y. Comp. Codes R. & Reg. § 270.3. Tier I hearings address the least serious infractions and can result in minor punishments such as the loss of recreation privileges. Hynes v. Squillace, 143 F.3d 653, 655 n.1 (2d Cir. 1998). Tier II hearings involve more serious infractions and can result in penalties which include confinement for a period of time in the special housing unit ("SHU"). Id. Tier III hearings, also known as "Superintendent's hearings," concern "the most serious violations of institutional rules" and can result in unlimited SHU confinement and the loss of "good time" credits. Id.; Walker v. Bates, 23 F.3d 652, 654 (2d Cir. 1994).

2010. (Transcript of Hearing dated Aug. 10, 2010 ("8/10 Tr."),
attached as Exh. I to Lyons Decl.). The Board received and
considered, among other documents, the petitioner's 1986 pre-
sentence investigation report and his 2010 Inmate Status Report.
(Administrative Appeal Decision Notice dated April 3, 2011 ("Appeal
Decision"), attached as Exh. L to Lyons Decl., at 1). Again, Mr.
Hodge described the facts of his underlying offense, acknowledged
his guilt, and expressed remorse. (8/10 Tr. at 3-7, 9-10, 14-15,
19-20). He also acknowledged his numerous prison disciplinary
violations through 2007, and described various training courses he
had taken while in prison. (8/10 Tr. at 10-11, 17-19).

At the conclusion of the hearing, the Board again denied the
Mr. Hodge's application and ordered him held for an additional
twenty-four months, concluding that "if released at this time,
there's a reasonable probability [the petitioner] would not live
and remain at liberty without violating the law." (8/10 Tr. at
22). In reaching this decision, the Board emphasized the severity
of Mr. Hodge's underlying offense, calling it "a senseless offense
[that showed] a total disregard for human life." (8/10 Tr. at 22).
The Board also noted factors that would support his release,
including his lack of "prior felony convictions," "positive
programming, release plans, letters of support, educational
achievements[,] and good disciplinary record since 2007." (8/10

Tr. at 22).   However, the Board concluded that "despite these accomplishments, discretionary release is not warranted" considering the "serious nature of [the petitioner's] instant offense." (8/10 Tr. at 22).

The petitioner filed a counseled administrative appeal with the Division of Parole Appeals Unit, asserting various claims of error in connection with the Board's decisions.   (Administrative Parole Appeal dated Dec. 9, 2010 ("Parole Appeal"), attached as Exh. K to Lyons Decl.).   On April 13, 2011, the Appeals Unit issued a decision unanimously affirming the decisions of the Board. (Appeal Decision at 1).

C.   Article 78 Proceeding

Mr. Hodge filed a pro se petition pursuant to Article 78 of the New York Civil Procedure Law and Rules ("CPLR") in Bronx County Supreme Court, dated April 26, 2011, appealing the Parole Board's decisions.   (Article 78 Petition dated April 26, 2011 ("Article 78 Petition"), attached as Exh. M to Lyons Decl.).   The petitioner asserted that (1) the Parole Board improperly relied on certain dismissed criminal charges and dismissed prison disciplinary violations, namely (a) a felony arrest in Bronx County on March 10, 1981, that was subsequently dismissed but which was mentioned in the petitioner's PSI and Inmate Status Report (PSI at 2-3; Inmate Status Report at 2A; Article 78 Petition at 3); and (b) a Tier II

6

disciplinary violation that was dismissed and ordered expunged from his record by court order dated March 4, 2010, but was mentioned in his Inmate Status Report (Inmate Status Report at 2; Article 78 Petition at 3); (2) the denial of parole was excessive, arbitrary, and capricious; (3) the Board improperly based its decisions solely on the seriousness of his underlying crime; (4) the Board improperly relied on information regarding juvenile arrests in 1976 and 1978 that were sealed pursuant to New York State statutes; and (5) the Board violated the his constitutional right to be rehabilitated (Article 78 Petition).  On March 21, 2012, the action was transferred to New York State Supreme Court, Sullivan County. (Order dated March 21, 2012, attached as Exh. N to Lyons Decl.).

In a decision dated June 11, 2012, the court dismissed the Article 78 petition, rejecting all of the petitioner's claims. (Decision and Order dated June 8, 2012 ("June 2012 Decision"), attached as Exh. Q to Lyons Decl.).  First, it rejected the petitioner's claim that the Board had improperly relied on dismissed felony charges from 1981 or on dismissed and expunged 1998 disciplinary infractions.  (June 2012 Decision at 5).  The court found that the charges "were not even discussed during the parole interview," and that, "[c]onsidering the lack of reference to those charges and lack of any other evidence suggesting the parole board relied on those charges in denying parole, inclusion

7

of said information [in the Inmate Status Report] was harmless error." (June 2012 Decision at 5). The Court also found it "unlikely the 1998 infractions, which had been ordered expunged but were not, had any impact on the parole board's review of the 21 infractions and overall disciplinary history of Petitioner." (June 2012 Decision at 5).

Second, the court rejected the petitioner's claim that the Board's decision was "arbitrary and capricious," because "the record demonstrates the hearing and parole board's decision complied with the statutory provisions of [N.Y.] Executive Law, §§ 259-c and 259-i," and "[t]here is nothing in the record to suggest that the parole board did not consider all of the factors when making its decision." (June 2012 Decision at 5).

Third, the court rejected the petitioner's claim that the Board denied parole solely based on the seriousness of his underlying offense, finding that the "record indicates the parole board considered various factors, including the seriousness of the crime, Petitioner's positive programming, educational achievements, and release plans," as well as the "Petitioner's less than stellar disciplinary record." (June 2012 Decision at 5).

Next, the court denied the petitioner's claim regarding the disclosure of juvenile arrest information in the PSI, because "a parole board is without power to correct a PSI," and "[i]t is the

responsibility of defense counsel at the time the [PSI] report is generated to make corrections," and the petitioner "may not collaterally attack the PSI." (June 2012 Decision at 6).

Finally, with respect to the petitioner's "right to rehabilitation" claim, the court observed that "[w]hile an inmate has a liberty interest in the possibility of release to parole, he does not have a constitutional right to parole release," and that his constitutional rights are not violated as long as he receives a hearing. (June 2012 Decision at 6) (emphasis in original). The court rejected the remainder of Mr. Hodge's claims because they "were unpreserved for review." (June 2012 Decision at 6). The petitioner filed a pro se appeal dated August 28, 2012, in the Appellate Division, Third Department, raising substantively the same claims raised in his Article 78 petition and a new claim that venue was improperly transferred to Sullivan County. (Petitioner's Brief to Appellate Division dated Aug. 28, 2012, attached as Exh. R to Lyons Decl.).

On August 14, 2012, the petitioner reappeared before the Parole Board, and the Board again denied release. (Letter of Kate H. Nepveu dated Oct. 18, 2012, attached as Exh. S to Lyons Decl.).

On January 24, 2013, the Appellate Division unanimously affirmed the judgment rejecting Mr. Hodge's Article 78 petition. Hodge v. Evans, 102 A.D.3d 1049, 958 N.Y.S.2d 304 (Mem.) (3d Dep't

2013).  The court ruled that his August 2012 hearing before the Board rendered the appeal moot and found that no exception to the mootness doctrine was applicable.  Id.  On April 25, 2013, the Court of Appeals denied the petitioner leave to appeal.  Hodge v. Evans, 21 N.Y.3d 852, 965 N.Y.S.2d 790 (Table) (2013).

On March 7, 2013, Mr. Hodge filed his pro se habeas petition in this Court.  He raises essentially the same arguments he raised in the state proceedings below, namely that the Parole Board (1) relied on inaccurate information and sealed records; (2) improperly denied parole release solely based on the seriousness of his underlying murder conviction; and (3) violated his due process liberty interest to be "rehabilitated and made compatible with society for release."  (Petition Under 28 USC Section 2241 & 2254 for Writ of Habeas Corpus by a Person in State Custody ("Pet."), ¶ 13).  In response, the respondent argues that (1) the Appellate Division dismissed the petitioner's claim on adequate and independent state law grounds, barring federal habeas review; (2) the claims are moot under federal law, because the petitioner already received the only relief he can obtain -- a parole rehearing; (3) the claims are unexhausted and procedurally defaulted; and (4) the claims are meritless.  (Memorandum of Law in Opposition to the Petition for a Writ of Habeas Corpus ("Resp. Memo.")).

Discussion

    A.   Legal Standard

    Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), for a claim that a state court has adjudicated on the merits, a federal court may grant a writ of habeas corpus to a state prisoner only where the state court's adjudication

> (1) resulted in a decision that was contrary to, or
> involved an unreasonable application of, clearly
> established Federal law, as determined by the Supreme
> Court of the United States; or (2) resulted in a decision
> that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State
> court proceeding.

28 U.S.C. § 2254(d).

    Federal law is "clearly established" when it is expressed in "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." Howes v. Fields, __ U.S. __, __, 132 S. Ct. 1181, 1187 (2012) (internal quotation marks omitted). When a petitioner raises an issue that the Supreme Court has not "squarely address[ed]" or "clear[ly] answer[ed]," habeas relief is simply unavailable. Wright v. Van Patten, 552 U.S. 120, 125-26 (2008).

    A state court's decision is "contrary" to clearly established federal law when the state court "applies a rule that contradicts the governing law set forth in" a Supreme Court opinion or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at

a result different from [its] precedent." <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000).

A state court's decision is "unreasonable" when the decision is "more than incorrect or erroneous" and is "objectively unreasonable." <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75 (2003).  It is a standard that is "difficult to meet"; habeas relief should be granted only where there is "no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." <u>Harrington v. Richter</u>, __ U.S.__,__, 131 S. Ct. 770, 786 (2011).  Notwithstanding this deferential standard, federal courts must independently evaluate whether a constitutional violation has occurred.  <u>Wright v. West</u>, 505 U.S. 277, 305 (1992) (O'Connor, J., concurring in judgment) ("We have always held that federal courts, even on habeas, have an independent obligation to say what the law is.").

Because Mr. Hodge is proceeding <u>pro se</u>, his submissions should be held to "less stringent standards than formal pleadings drafted by lawyers." <u>Ferran v. Town of Nassau</u>, 11 F.3d 21, 22 (2d Cir. 1993) (internal quotation marks omitted).  Thus, the courts must "read the pleadings of a <u>pro se</u> plaintiff liberally and interpret them to raise the strongest arguments they suggest." <u>McPherson v. Coombe</u>, 174 F.3d 276, 280 (2d Cir. 1999) (internal quotation marks omitted).  Nevertheless, <u>pro se</u> status "does not exempt a party

from compliance with relevant rules of procedural and substantive law." <u>Traquth v. Zuck</u> 710 F.2d 90, 95 (2d Cir. 1983) (internal quotation marks omitted).

    B.   <u>Independent and Adequate State Ground</u>

    The respondent contends that the Appellate Division's finding that the petitioner's claims were moot constitutes an independent and adequate state ground that bars habeas review. (Resp. Memo. at 18-20).

    A federal habeas court is precluded from reviewing a "question of federal law decided by state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." <u>Coleman v. Thompson</u>, 501 U.S. 722, 729 (1991); <u>Jones v. Stinson</u>, 229 F.3d 112, 117 (2d Cir. 2000). This occurs when the last state court rendering judgement in the case "clearly and explicitly" states that its judgment rested on a state procedural bar. <u>Harris v. Reed</u>, 489 U.S. 255, 263 (1989) (internal quotation marks omitted); <u>Jones</u>, 229 F.3d at 118. In addition, courts apply a presumption against finding a state procedural bar and "ask not what [the courts] think the state court actually might have intended but whether the state court plainly stated its intention." <u>Jones</u>, 229 F.3d at 118.

    The Appellate Division -- the last state court rendering

judgment in the case -- dismissed Mr. Hodge's Article 78 appeal as moot because the "petitioner reappeared before the Board in August 2012 at which time his request for parole release was again denied." Hodge v. Evans, 102 A.D.3d at 1049, 958 N.Y.S.2d at 304. In doing so, the Appellate Division did not plainly state that its judgment rested on a state procedural bar.  Since there is no indication from the decision that it was based on an independent and adequate state ground, the respondent's argument on this ground should be rejected.  See Almonte v. New York State Division of Parole, No. 04-CV-484, 2005 WL 3701228, at *3-4 (N.D.N.Y. June 1, 2005) (rejecting claim that Appellate Division's dismissal of petitioner's appeal of his parole denial as moot was based on independent and adequate state ground).

C.  Mootness

The respondent argues that even if the federal habeas court is not barred from reviewing the petition, all of the petitioner's claims are rendered moot by the subsequent parole hearing he received in 2012. (Resp. Memo. at 20-21).  The State contends that because the only habeas relief the petitioner can obtain is a Parole Board rehearing, and he was already accorded that relief in 2012, the habeas court cannot grant him any further relief. (Resp. Memo. at 2).

Mr. Hodge contends that his claim is not moot because the

14

"issue [] is unresolved [and] recurring" and he is "still being prejudiced by the matter complained of." (Traverse in Response to Respondent's Opposition to Petitioner's Habeas Corpus ("Reply") at 1). Liberally construed, he argues that because it normally takes more than two years to exhaust all available state remedies, he would always be eligible for a new biannual parole hearing by the time a federal court could hear his habeas petition. Other habeas petitioners challenging their parole denials have argued, as Mr. Hodge does now, that their petitions for federal habeas relief could be denied on mootness grounds every two years, effectively allowing the Parole Board to avoid any federal review of its parole decisions. See, e.g., Siao-Pao v. Connolly, 564 F. Supp. 2d 232, 239 (S.D.N.Y. 2008); Defino v. Thomas, No. 02 Civ 7413, 2003 WL 40502, at *3 (S.D.N.Y. Jan. 2, 2003). The case law is not settled on whether a subsequent parole hearing renders moot a federal habeas petition to review an earlier parole denial. Compare Rodriquez v. Greenfield, No. 99 Civ. 0352, 2002 WL 48440, at *4 (S.D.N.Y. Jan. 10, 2002) (holding that challenge to parole denial was "academic" because of subsequent parole denials), with Defino, 2003 WL 40502, at *3 (noting that this line of argument is "potentially powerful").

The strength of Mr. Hodge's argument depends on whether the deficiencies that he complains of were cured by the time he

appeared for the 2012 parole hearing.  For example, if the erroneous information that the Parole Board allegedly relied on for the 2010 hearings had been removed from the records the Board reviewed for the 2012 hearing, then his claims based on the Board's reliance on such information would be rendered moot by the subsequent rehearing.  However, the parties have not provided the Court documents related to that hearing, and thus, I cannot determine whether the deficiencies the petitioner complains of were still present in the 2012 Board hearing.  Nevertheless, I need not reach this issue now. "[I]n habeas corpus cases, potentially complex and difficult issues about the various obstacles to reaching the merits should not be allowed to obscure the fact that the underlying claims are totally without merit." <u>Brown v. Thomas</u>, No 02 Civ. 9257, 2003 WL 941940, at *1 (S.D.N.Y. March 10, 2003). Since Mr. Hodge's petition can be denied on the merits, I do not reach a decision on mootness.

    C.   <u>Exhaustion</u>

Before seeking federal habeas relief, a petitioner must exhaust the remedies available in state court or demonstrate the absence of an effective state remedy. <u>See</u> <u>Fama v. Commissioner of Correctional Services</u>, 235 F.3d 804, 808 (2d Cir. 2000) (citing 28 U.S.C. § 2254(b)(1)).  This is to first give the state the "'opportunity to . . . correct' alleged violations of its

prisoners' federal rights." <u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004) (quoting <u>Duncan v. Henry</u>, 513 U.S. 364, 365 (1995)).  A petitioner has exhausted a claim in state court when he has "fairly present[ed]" each federal claim to the highest state court, "thereby alerting that court to the federal nature of the claim." <u>Id.</u>

The respondent acknowledges that the petitioner has exhausted three of his four claims, that (1) the Board relied on dismissed 1981 felony charges and dismissed and expunged 1998 disciplinary proceedings; (2) the Board relied on the petitioner's juvenile arrest record; and (3) the petitioner was denied the right to rehabilitation.  (Resp. Memo. at 15).  The respondent notes that Mr. Hodge raised these claims in federal constitutional terms in his Article 78 petition, his appeal to the Appellate Division, and his leave application to the Court of Appeals.  (Resp. Memo. at 15-16).  The respondent contends, however, that Mr. Hodge failed to "fairly present" the federal nature of his claim that the Board relied solely on the seriousness of his underlying offense.  (Resp. Memo. at 16).

A petitioner can "indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies on or a case deciding such a claim on federal grounds, or by

simply labeling the claim 'federal.'" <u>Baldwin</u>, 541 U.S. at 32. Nevertheless, a petitioner does not fairly present the legal basis of his claim by making general appeals to broad constitutional principles, such as "due process," "equal protection," and "the right to a fair trial." <u>See Gray v. Netherland</u>, 518 U.S. 152, 163 (1996). The inquiry whether a petitioner has fairly presented his claim to the state's highest court is not mechanical, but requires examination of what the petitioner said and the context in which he said it. <u>See Picard v. Connor</u>, 404 U.S. 270, 277-78 (1971).

In his brief in support of his appeal to the Appellate Division, Mr. Hodge argued that the Board "violated due process" by failing to consider factors other than the seriousness of his underlying crime. (Article 78 Petition, at 10-11). He argued that the Board's denial of parole was "irrational bordering on impropriety" given his good disciplinary record and other evidence in support of his parole release. (Article 78 Petition at 9-10). He relied on <u>Greenholtz v. Inmates of Nebraska Penal and Correctional Complex</u>, 442 U.S. 1 (1979), to argue that the state violated his liberty interest in early release entitled to constitutional protections. (Article 78 Petition at 20). His due process argument before the Appellate Division was essentially the same as the argument he presents before this Court, a clear federal due process claim. At a minimum, Mr. Hodge has alerted the state

court that he was making a federal due process claim, and his argument was far more than mere general appeals to broad constitutional principles.

To the extent that Mr. Hodge's argument before this Court differs from the argument he raised in state court, a mere variation in legal theory does not automatically lead to a finding of a failure to exhaust.  See Picard, 404 U.S. at 277.  The substance of his argument remains the same.  Therefore, the petitioner has fairly presented the claim that the Board denied his parole solely based on the seriousness of his underlying offense in violation of due process.

D.   Due Process Claim

Inmates have a liberty interest in parole only if the state of their incarceration fosters an expectation of release by "establish[ing] a scheme whereby parole shall be ordered unless specified conditions are found to exist."  Barna v. Travis, 239 F.3d 169, 171 (2d Cir. 2001) (internal quotation marks omitted). The Second Circuit has held that New York State does not create a liberty interest in parole because it gives the Parole Board great discretion in deciding which inmates may be release based on the "circumstances of each individual case."  Id. (internal quotation marks omitted).  While the Parole Board must consider certain

19

statutory factors,[3] it may accord each factor "whatever weight it deems appropriate, and need not expressly discuss each of the reasons in its determination." Davis v. Thomas, 256 F. Supp. 2d 190, 192 (S.D.N.Y. 2003) (citing Garcia v. New York State Division of Parole, 239 A.D.2d 235, 239, 657 N.Y.S.2d 415, 418 (1st Dep't 1997)).

Since New York inmates do not have a liberty interest in parole, Mr. Hodge's Due Process rights are "limited to not being denied parole for arbitrary or impermissible reasons." Boddie v. New York State Division of Parole, 285 F. Supp. 2d 421, 428 (S.D.N.Y. 2003) (internal quotation marks omitted); see also Graziano v. Pataki, 689 F.3d 110, 116 (2d Cir. 2012) ("[O]nly the most egregious official conduct can be said to be arbitrary in the constitutional sense." (internal quotation marks omitted)). "Denial of parole is neither arbitrary nor capricious when the Parole Board relies on the factors defined by New York statute." Romer v. Travis, No. 03 Civ. 1670, 2003 WL 21744079, at *6 (S.D.N.Y. July 29, 2003); Graziano v. Pataki, No. 06 Civ 0480, 2006

---

[3] The statutory factors that the Board must consider include: (a) the inmate's institutional record; (b) the inmate's release plans; (c) any statement made to the board by the victim's representative; (d) the seriousness of the offense, with consideration of the sentence and the recommendation of the sentencing court; and (e) the inmate's prior criminal record. N.Y. Exec. Law 259-i(2)(c)(A).

WL 2023082, at *7-9 (S.D.N.Y. July 17, 2006) (holding that prison inmates do not have constitutional right to release on parole, but recognizing "a due process right to have the decision made only in accordance with the statutory criteria" specified by state law).

### 1.   Relying on Misinformation and Sealed Records

Mr. Hodge claims that the Parole Board violated due process and various New York confidentiality statutes[4] by relying on sealed or inaccurate information regarding his arrest record and disciplinary violations that were listed in his pre-sentence report, 1986 sentencing transcript, and 2010 Inmate Status Report (Inmate Status Report; Pet., ¶ 13(A), (B)).  Specifically, Mr. Hodge contends that the Parole Board relied on (1) his arrest in 1981 that was later dismissed but was listed in his PSI (PSI at 2-

---

[4] As an initial matter, to the extent Mr. Hodge relies on New York confidentiality statutes, including CPL §§ 160.50 and 390, and Family Court Act §§ 375.1 and 381.2 to argue that the PSI and the Inmate Status Report contained sealed record, his claims are not cognizable on federal habeas review.  See, e.g., Swarthout v. Cooke, __ U.S. __, __, 131 S. Ct. 859, 863 (2011) (holding, in parole denial case, that "a mere error of state law is not a denial of due process" (internal quotation marks omitted)); Graziano, 689 F.3d at 116 (noting that "while Plaintiffs may be able to state a valid claim in New York State courts under New York state law, Plaintiffs have failed to state a claim under the Due Process Clause of the United States Constitution"); Afrika v. Conway, No. 06-CV-0280T, 2011 WL 582618, at *8 (W.D.N.Y. Feb. 9, 2011) (claim under CPL § 160.50 is not cognizable under federal habeas review); Reeb v. Woods, 751 F. Supp. 2d 484, 490 (W.D.N.Y. 2010) (same); Miller v. Hunt, No. 9:06-CV-177, 2008 WL 170411, at *10 (N.D.N.Y. Jan. 15, 2008) (rejecting CPL § 390.50 claim on habeas review, because it was "purely a state law claim").

3) and Inmate Status Report (Inmate Status Report at 2A); (2) 1998
Tier II prison disciplinary charges that were later dismissed and
expunged, but were mentioned in his 2010 Inmate Status Report
(Inmate Status Report at 2); and (3) his juvenile arrests in 1976
and 1978 that, although sealed, were mentioned in his PSI (PSI at
9, 13) and sentencing minutes (Sentencing Tr. at 15).[5]

As the Article 78 Court concluded, there is no basis to
believe that the Parole Board relied on any erroneous information
in rendering its decision. (June 2012 Decision at 5). Neither the
June 2010 Parole Board decision nor the August 2010 Parole Board
decision contains mention of the alleged misinformation about which

---

[5] While the petitioner alleges that the Board violated due
process by relying on inaccurate information, the petitioner points
to only one clearly inaccurate statement in the parole board file
-- the inclusion of his 1998 Tier II disciplinary violation, which
should have been expunged.  The remaining two allegedly inaccurate
statements appear to be entirely accurate.  First, the petitioner
complains that his 1981 felony charges were dismissed, and the PSI
and Inmate Status Report he complains about expressly state that
the charges were dismissed.  (PSI at 2; Inmate Status Report at
2A).  Second, the petitioner contends that, contrary to the PSI and
sentencing minutes, he was never arrested as a juvenile in 1976 and
1978, but only picked up for questioning.  (Memorandum in Support
of Writ of Habeas Corpus ("Pet. Memo.") at 11, 13).  However, at
the June 2010 parole hearing, the petitioner stated that as a
"young kid," he had been "arrested" for, among other things,
stealing car tires, but that "[i]n each instance [he] paid
restitution and accepted responsibilities for each one of those
crimes."  (6/10 Tr. at 10).   The probation records that the
petitioner himself submitted with his habeas petition confirm that
he was, in fact, arrested in 1976 and 1978.  (Bronx Family Intake
Report dated Dec. 27, 1978, attached as part of Exh. K to Lyons
Decl.).

the petitioner complains.  Furthermore, other than his own mention of his arrests as a juvenile, there was no reference to any of the alleged misinformation in either Board hearing.  Courts have rejected habeas claims regarding erroneous PSI reports where, as here, the Parole Board based its decision on permissible factors without referring to the erroneous information.  See, e.g., Johnson v. Horn, Nos. 10 CV 73, 10 CV 1387, 2010 WL 5313542, at *4 (E.D.N.Y. Dec. 15, 2010); Boddie, 285 F. Supp. 2d at 429.

It is clear that parole was denied based upon statutorily authorized consideration of an offender's background and the severity of his offense.  Both decisions at issue here emphasize the seriousness of the petitioner's underlying offense of murder. In the June 2010 decision, the Board referred to the underlying offense as an "extreme escalation of an out of control, larcenist related criminal history," and further noted that the petitioner had a "less than satisfactory discipline history."  (6/10 Tr. at 16).  In the August 2010 decision, the Board described the underlying offense as "a senseless offense" that showed "a total disregard for human life" while noting the petitioner's "positive programming, release plans, letters of support, educational achievement and good disciplinary record since 2007."  (8/10 Tr. at 22).

Lastly, any inaccurate information that the Board might have

considered was trivial in the context of the petitioner's long record of larceny-related arrests and convictions and an even longer record of Tier II and Tier III violations. For example, the 1981 felony charges –– which were expressly described as "dismissed" on the PSI and Inmate Statue Report –– were insignificant when considered in the context of the petitioner's multiple convictions, which include several disorderly conduct convictions arising from larcenous conduct, a conviction for attempted criminal possession of stolen property in the third degree, and a conviction for attempted criminal trespass in the second degree.  (PSI at 2-3; Inmate Status Report at 2A). Similarly, as the Article 78 court concluded, it is "unlikely the 1998 [disciplinary] infractions, which had been ordered expunged but were not, had any impact on the parole board's review of the 21 infractions and overall disciplinary history of Petitioner," including three Tier III violations as late as 2006. (June 2012 Decision at 5; Inmate Status Report at 2 (describing disciplinary violations)).  The two juvenile offenses consisted of arrests that took place when the petitioner was 12 and 14 years old, and aside from the petitioner's own statement at the June 2010 hearing, the record did not reflect what crimes the petitioner was arrested for on those occasions.  (PSI at 9, 13; Sentencing Minutes at 15). Considering the substantial weight the Board placed on the severity

24

of the underlying crime in reaching its decisions, it is inconceivable that the alleged misinformation played any significant role in tipping the balance toward denying parole.

### 2.   Seriousness of the Petitioner's Crime

Mr. Hodge claims that the Parole Board denied parole solely based on the seriousness of his underlying offense. (Pet., ¶ 13(D)). He claims that the Board failed to consider his accomplishments while in prison and other positive factors in support of his early release. His claim is not supported by the record and fails as a matter of law.

First, as the Article 78 court concluded, the "record indicates the parole board considered various factors, including the seriousness of the crime, Petitioner's positive programming, educational achievements, and release plans," and "Petitioner's less than stellar disciplinary record." (June 2012 Decision at 5; 8/10 Tr. at 22). The decisions of the Board make it apparent that the Board considered other statutory factors it was required to consider. See Thurman v. Hodges, 292 A.D.2d 872, 873, 739 N.Y.S.2d 324 (4th Dep't 2002) (affirming parole denial because record demonstrates Parole Board considered relevant statutory factors before concluding serious and violent nature of petitioner's underlying crime rendered parole inappropriate).

Furthermore, "the Parole Board lawfully could have determined

that the seriousness of the offense outweighed the positive factors and [the Parole Board] was not required to expressly discuss each factor in its determination," <u>Robles v. Dennison</u>, 449 F. App'x 51, 53-54 (2d Cir. 2011); <u>see also</u> <u>Graziano</u>, 689 F.3d at 116 ("[E]ven if New York State implemented an official policy denying parole to all violent offenders, such a policy would not violate the Due Process Clause."). "Discretionary release on parole shall not be granted merely as a reward for good conduct." N.Y. Exec. Law § 259-i(2)(c)(A). Here, the underlying murder conviction involved a serious crime that the Board called "senseless offense [that showed] a total disregard for a human life." (8/10 Tr. at 22). The nature of the petitioner's crime bears on "whether his release is compatible with the welfare of society," <u>Richards v. Travis</u>, 288 A.D.2d 604, 605, 732 N.Y.S.2d 465, 466 (3d Dep't 2007), and it was not arbitrary or capricious for the Board to determine that the severity of his offense outweighed the collection of the positive factors in support of his early release.

> 3. <u>Right to Rehabilitation</u>

Finally, the petitioner claims that the Parole Board's decision violated his liberty interest under the Due Process Clause to be rehabilitated and made compatible with society for release. (Pet. Memo. at 17-20). He contends that when the Board denied parole, it "affirm[ed] that [the Department of Corrections] has

failed in its legal obligation to rehabilitate the inmate, and make the inmate compatible with the welfare of society." (Pet. Memo. at 17).     However, this is not a cognizable claim.  The Supreme Court has specifically stated that "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." <u>Greenholtz</u>, 442 U.S. at 7.  The Constitution protects him from being denied parole for arbitrary or impermissible reasons, but does not mandate the State to rehabilitate him or make him "fit for early release." <u>Cf.</u> <u>Moody v. Daggett</u>, 429 U.S. 78, 99 n.9 (1976) (noting that there is no due process right to participate in rehabilitation program).     As discussed, the Board's denial did not deprive him of that protection.

<u>Conclusion</u>

     For the foregoing reasons, I recommend that the petition for a writ of habeas corpus be denied.    Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation.    Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Laura Taylor Swain, Room 755, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007.

Failure to file timely objections will preclude appellate review.

Respectfully submitted,

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
        July 30, 2013

Copies mailed this date:

Martin Hodge
#86-A-8851
Sullivan Correctional Facility
325 Riverside Dr.
Fallsburg, NY 12733

Lisa E. Fleischmann, Esq.
Paul B. Lyons, Esq.
Assistant Attorneys General
120 Broadway
New York, NY 10271

28